1  BURKHALTER KESSLER CLEMENT & GEORGE LLP
2  Alton G. Burkhalter, Esq., Bar No. 119594
   Michael Oberbeck, Esq., Bar No. 186718
3  2020 Main Street, Suite 600
   Irvine, California 92614
4  Telephone: (949) 975-7500
   Facsimile: (949) 975-7501

5  Attorneys for Plaintiffs Oscar Swanky and Helen Swanky, Craig Emmerson and Cynthia
6  Emmerson, Chase Emmerson, Gary May and Cindy May, Warner Gabel and Kathleen
   Gabel, and Keith Withycombe and Patricia Withycombe

7

8  **UNITED STATES DISTRICT COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

| | |
|---|---|
| OSCAR SWANKY, an individual, HELEN SWANKY, an individual, CRAIG EMMERSON, an individual, CYNTHIA EMMERSON, an individual, CHASE EMMERSON, an individual, GARY MAY, an individual, CINDY MAY, an individual, WARNER GABEL, an individual, KATHLEEN GABEL, an individual, KEITH WITHYCOMBE, an individual, AND PATRICIA WITHYCOMBE, an individual, <br><br>           Plaintiffs, <br><br>      vs. <br><br>DANA MACKAY, an individual; YLSB LLC, a California limited liability company; PRIME-M SERVICES LLC, a California limited liability company, PRIME-M LLC, a California limited liability company, PRIME PARTICIPATION LLC, a California limited liability company, and DOES 1 through 25, inclusive, <br><br>           Defendants. | CASE NO.: 8:16-cv-884 <br><br> **COMPLAINT FOR:** <br><br> 1. **BREACH OF FIDUCIARY DUTY;** <br> 2. **BREACH OF WRITTEN CONTRACT;** <br> 3. **ACCOUNTING; AND** <br> 4. **INVOLUNTARY DISSOLUTION AND APPOINTMENT OF RECEIVER.** <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs Oscar Swanky and Helen Swanky, Craig Emmerson and Cynthia Emmerson, Chase Emmerson, Gary May and Cindy May, Warner Gabel and Kathleen Gabel, and Keith Withycombe and Patricia Withycombe ("Plaintiffs") allege for their Complaint against Defendants Dana Mackay, YLSB LLC, Prime Management Services LLC, Prime-M LLC, Prime Participation LLC, and, and DOES 1 through 25, inclusive, as follows:

## I. PRELIMINARY ALLEGATIONS
## DEFENDANT DANA MACKAY AND HIS HIERARCHY OF LLCS

1. Defendant Dana Mackay ("Mackay") is an individual residing and doing business in Orange County, California. Through a hierarchy of four limited liability companies, Mackay has given himself unchecked management, control and dominion over Defendant YLSB LLC. YLSB owns six Yogurtland retail stores in and around the South Bay, and two more in the Bay Area. Mackay has misused his control and management of these LLCs for his own personal gain to the detriment of the minority interest holders.

2. Mackay has a 60% membership interest in, and is the manager of, Defendant Prime-M LLC ("Prime-M"), which is a limited liability company organized and doing business in Orange County, California, with its primary place of business located at 3857 Birch Street, Suite 496, Newport Beach, CA 92660.

3. Prime-M, which Mackay controls and manages, has an 80% membership interest, and is the manager of, Defendant Prime Participation LLC ("Prime Participation"), which is a limited liability company organized and doing business in Orange County, California, with its primary place of business located at 3857 Birch Street, Suite 496, Newport Beach, CA 92660.

4. Mackay's wife, Elizabeth Hargreaves, has a 10% membership interest in Prime Participation.

5. Prime Participation, which Mackay controls and manages through his controlling and managing interest in Prime-M, has a 50% membership interest, and is the

1
**COMPLAINT**

manager of, Defendant YLSB LLC ("YLSB"), which is a limited liability company organized and doing business in Orange County, California, with its primary place of business located at 3857 Birch Street, Suite 496, Newport Beach, CA 92660.

6. Mackay also has an 8% membership interest in YLSB. By virtue of his control and management of Prime Participation as described above, Mackay effectively holds 58% of the membership, giving him a majority voting interest and unchecked control over YLSB.

7. Mackay also has a 51% membership interest, and is the manager of, Defendant Prime-M Services ("Prime-M Services"), which is a limited liability company organized and doing business in Orange County, California, with its primary place of business located at 3857 Birch Street, Suite 496, Newport Beach, CA 92660.

8. Below is a visual depiction of the LLC hierarchy:



## THE PLAINTIFFS

9. Plaintiffs Oscar and Helen Swanky (the "Swankys") are husband and wife residing in Paradise Valley, Arizona. The Swankys have an undivided 4.27665% membership interest in YLSB. As of October 31, 2015, the Swankys had invested at least $322,440.00 in YLSB.

10. Plaintiffs Craig and Cynthia Emmerson (the "Emmersons") are husband and wife residing in Paradise Valley, Arizona. The Emmersons have an undivided 4.27665% membership interest in YLSB. As of October 31, 2015, the Emmersons had invested at least $322,440.00 in YLSB.

11. Plaintiff Chase Emmerson ("Chase") is an individual residing in Phoenix, Arizona. Chase owns a 0.5132% membership interest in YLSB. As of October 31, 2015, Chase had invested at least $45,000 in YLSB.

12. Plaintiffs Gary and Cindy May (the "Mays") are husband and wife residing in Phoenix, Arizona. The Mays have an undivided 1.0264% membership interest in YLSB. As of October 31, 2015, the Mays had invested at least $151,640 in YLSB.

13. Plaintiffs Warner and Kathleen Gabel (the "Gabels") are husband and wife residing in Scottsdale, Arizona. The Gabels have an undivided 3.615% membership interest in YLSB. As of October 31, 2015, the Gabels had invested at least $250,000 in YLSB.

14. Plaintiffs Keith and Patricia Withycombe (the "Withycombes") are husband and wife residing in Paradise Valley, Arizona. The Withycombes own a 4.27665% membership interest in YLSB. As of October 31, 2015, the Withycombes had invested at least $322,440.00 in YLSB.

15. Collectively, the Swankys, the Emmersons, Chase, the Mays, the Gables, and the Withycombes are referred to herein as Plaintiffs.

## II. GENERAL ALLEGATIONS

16. In or around 2011, Plaintiffs were solicited by Mackay to invest in YLSB. Acting on behalf and as the representative of YLSB, Prime Participation, Prime-M, and Prime-M Services, Mackay referred to the business venture as "Prime Management". Mackay represented that Prime Management was a group of "real estate investors positioned to identify and control proven, high growth food services opportunities for immediate cash flow." Mackay boasted of his vast experience as a real estate investor in the South Bay (from Santa Monica to San Pedro).

17. In investor solicitations, Mackay promised a "30 to 40 month pay back" of investments, an "Internal Rate of Return greater than 20%", an "R.O.I. [of] 22%-

1    30%", and "cash flow within 90 days of store opening." Mackay also flatly stated, "No
2    cash calls."

3            18.    In investor solicitations, Mackay described the relationship between
4    Prime Management and YLSB: "Prime Management is the entity that will oversee the
5    operations at store level subject to a management contract with YLSB-1, LLC", and
6    "Prime Participation LLC is the sponsor of the Investment offering, has provided
7    temporary start up funding and will be responsible for any funding or operating cash
8    shortfalls. The principals of PP will also be signing the leases if required. The primary
9    "Advisors" will receive a % interest in PP in lieu of normal fees."

10           19.    Based upon the representations and promises that Mackay made in the
11   investment offerings, Plaintiffs each purchased Class B membership interest units of
12   YLSB between August and December, 2011.

13           20.    Within the last three years, however, numerous problems have arisen
14   regarding YLSB, all of which are directly related to Mackay's unfettered control,
15   operation and management of the YLSB business. Many of the problems stem from
16   Mackay's reckless decision to open two Yogurtland retail stores in Northern California.
17   Mackay's real estate background and experience is based in Southern California, but he
18   had little knowledge of the Bay Area real estate market. In addition, YLSB had no
19   physical presence in Northern California, meaning that it lacked the physical infrastructure
20   and manpower "on the ground" to ensure the success of these remote locations.

21           21.    Mackay aggressively pursued the Bay Area expansion over the
22   reservations of many YLSB investors, and he committed YLSB to opening a retail store at
23   a location he had never even physically inspected or visited. Not surprisingly, this retail
24   location failed miserably, and all of the three Bay Area stores that Mackay caused YLSB
25   to open between 2012 and 2015 have underperformed.

26           22.    Mackay has not followed through on his promises to deliver a 20-30%
27   return on investment, and none of the Plaintiffs have received a pay back of their
28   respective investment within 30 to 40 months. Mackay has failed to provide accurate and

timely information to the investors regarding the status of their investments, the financial condition of YLSB, and the performance of the retail stores owned by YLSB and operated by Prime-M Services. As a result of Mackay's sporadic delivery of information, Plaintiffs have concerns about the accuracy and amounts in their respective capital accounts.

23. Mackay has also utilized his ability to control each of the entities in the YLSB hierarchy to his significant personal gain, and to the detriment of both YLSB and Plaintiffs. Long before Plaintiffs invested in YLSB, Mackay unilaterally negotiated and executed a Management Services Agreement between Prime-M (for whom he is the manager) and YLSB (whose manager is Prime Participation, whose manager is Prime-M, whose manager is Mackay) pursuant to which Prime-M agreed to "manage the day-to-day operations" of the Yogurtland retail stores owned by YLSB. Prime-M assigned its rights and obligations under the Management Services Agreement to Prime-M Services (whose manager is Mackay); this assignment had little to no beneficial impact on the business.

24. Pursuant to the Management Services Agreement, Prime-M Services receives as compensation five percent (5%) of YLSB's gross sales. Because Mackay is Prime-M Services' manager and 51% interest holder, the vast majority of the 5% compensation payment goes directly to Mackay. However, for approximately the last three years, Prime-M Services has provided virtually no service of any value in exchange, and, in fact, Prime-M Services has not provided the services it is contractually obligated to perform at all.

25. When Plaintiffs invested in YLSB, Mackay represented to them that the retail stores would be *managed* by Prime-M Services. Specifically, Mackay represented that the in-store management and area managers would be paid for by Prime-M Services and would come directly out of the 5% Gross Sales that Prime-M Services was to receive as compensation. Instead, in-store managers are paid as employees of the individual retail stores, and their compensation is paid for by YLSB, not Prime-M Services as promised. This significantly and detrimentally has impacted the value of Plaintiffs' membership interests, capital accounts, and investment.

26. The Management Services Agreement further required Prime-M Services to supervise, manage, and train the in-store employees. For approximately the last three years, Prime-M Services has failed to supervise, manage or train in-store employees as obligated. In sum, the duties and obligations that Prime-M Services is supposed to provide under the Management Services Agreement have been relegated to, assumed by and paid for by the retail stores.

27. Because Prime-M Services provides virtually nothing to YLSB or its retail stores, the compensation it receives under the Management Services Agreement is grossly disproportionate and does not accurately reflect the fair market value of similar services that YLSB could obtain in an arm's length transaction with a third party service provider. On multiple occasions, Plaintiffs have informed Mackay of their belief that the Management Services Agreement is the result of a clear conflict of interest, and they have demanded that Mackay reduce the fees charged thereunder to allow the company to financially stabilize. Mackay has refused to do so because the Management Services Agreement allows him to capture 5% of the total amount of YLSB's gross sales.

28. In addition, within the last three years, Plaintiffs have discovered that Mackay has used YLSB monies and employees to fund and promote a jewelry business owned and operated by his wife, Elizabeth Hargreaves. Specifically, Plaintiffs are informed and believe, and based thereon allege, that Mackay has taken money from YLSB's Local Store Marketing Fund and given it to Ms. Hargreaves for her personal use and benefit. Mackay has also authorized and allowed Ms. Hargreaves to use key YLSB employees, including but not limited to an employee named Kristin Masters, for the jewelry business while paying Masters an annual salary in excess of $60,000 from YLSB. Mackay has also utilized YLSB employees, equipment and assets to promote, facilitate and further his other, unrelated business interests; upon information and belief, he has commingled and intermingled YLSB assets and funds with assets of his other business interests, and he has orchestrated intercompany transfers to personally benefit himself and

his business interests, to the detriment of YLSB and Plaintiffs, without the approval, authority or consent of any of the Plaintiffs.

29. Ms. Hargreaves purportedly provides marketing services to YLSB. Prior to their investments in YLSB, Mackay represented to Plaintiffs that Ms. Hargreaves would be compensated for those services by receiving a 10% membership interest in Prime Participation. In direct contradiction to his representations to Plaintiffs, Mackay pays Ms. Hargreaves a monthly salary of at least $4,000, from YLSB, for those marketing services in addition to the membership interest she received in Prime Participation. The amount of compensation Ms. Hargreaves receives for the minimal services that she provides is grossly disproportionate and does not constitute an arm's length, fair market value for her services. Moreover, the services Ms. Hargreaves are among the services that Prime M Services was contractually obligated to provide to YLSB and for which it received, and continues to receive, 5% of YLSB's gross sales. Plaintiffs have objected to the payments to Ms. Hargreaves for these purported marketing services.

30. YLSB was profitable during the first year of Plaintiffs' investments. YLSB reported $158,746 in ordinary business income on its 2011 tax return. Each subsequent year, however, YLSB did worse. In 2012, YLSB reported -$17,343 in ordinary business income. In 2013, YLSB reported -$293,673 in ordinary business income. In 2014, YLSB reported -$73,708 in ordinary business income.

31. By the end of 2014, Plaintiffs had become frustrated with Mackay's management and operation of YLSB. In response to their frustration, Mackay offered to buy out some of Plaintiffs' membership interests, which offer was contingent upon the investors taking a significant loss.

32. Plaintiffs collectively drafted and sent a response to Mackay in which they stated that "we feel that your offer and explanation of your perceived value of YLSB confirm our belief that the deal we originally signed up for has fundamentally changed. … partially due to a change in the demand for frozen yogurt, but also to a significant extent due to ineffective management of the company." Plaintiffs proposed that the business

venture be terminated by means of a separation or by a sale of the company on the open market.

33. Mackay disputed Plaintiffs' allegations of mismanagement and informed them that he had no intention of selling the stores. Instead, he made lowball offers to some of the Plaintiffs, which Plaintiffs rejected.

34. Further, within the last three years, Plaintiffs have discovered that Mackay has improperly diluted their respective membership interests in YLSB without their approval, consent or knowledge.

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duty Owed As Manager Of YLSB

(By Plaintiffs against Defendants Prime Participation and Mackay)

35. Plaintiffs incorporate by reference the allegations of paragraphs 1-34, inclusive, as though set forth in full herein.

36. Corp. Code § 17704.09 provides that a manager of a limited liability company owes a fiduciary duty of care and loyalty "to account to the limited liability company and hold as trustee for it any property, profit, or benefit derived by the [manager] in the conduct and winding up of the activities of a limited liability company or derived from the use by the [manager] of a limited liability company property, including the appropriation of a limited liability company opportunity." The manager must also "refrain from dealing with the limited liability company in the conduct or winding up of the activities of the LLC as or on behalf of a person having an interest adverse to the LLC." The manager must also "refrain from competing with the LLC in the conduct or winding up of the activities of the LLC."

37. Prime Participation is the manager of YLSB and owed a fiduciary duty of care and loyalty to YLSB and to its minority members. By virtue of his position as the majority member and manager of Prime M, who was the manager and majority member of Prime Participation, Mackay controlled and managed Prime Participation. All actions of

Prime Participation which constitute violations of its breach of fiduciary duty as the manager of YLSB were undertaken at the specific direction, and under the direct control, of Mackay.

38. Prime Participation and Mackay breached the fiduciary duty of care and loyalty to YLSB and to its minority members by at least the following acts:

a. Aggressively pursuing the Bay Area expansion over the reservations of many YLSB investors and committing YLSB to opening a retail store at a location sight unseen;

b. Failing to deliver a 20-30% return on investment as promised;

c. Failing to pay back any of the Plaintiffs any of their respective investments within 30 to 40 months as promised;

d. Failing to provide accurate and timely information to Plaintiffs regarding the status of their investments, the financial condition of YLSB, and the performance of the retail stores owned by YLSB and operated by Prime-M Services;

e. Negotiating a Management Services Agreement pursuant to which Prime-M Services, of which Mackay is the 51% member, receives as compensation five percent (5%) of YLSB's gross sales, despite providing virtually no service of any value in exchange to YLSB;

f. Failing to ensure that Prime-M Services provided the services it is contractually obligated to perform and for which it has been substantially compensated;

g. Failing to require Prime-M Services to pay for the in-store management out of the 5% Gross Sales that Prime-M Services received as compensation and, instead, causing in-store managers to be paid as employees of the individual retail stores, and their compensation is paid for by YLSB, not Prime-M Services as promised;

h. Using YLSB monies and employees to fund and promote a jewelry business owned and operated by Mackay's wife, Elizabeth Hargreaves;

i. Paying Mackay's wife a monthly salary of at least $5,000, from YLSB, ostensibly for marketing services that Prime M Services was contractually

obligated to provide to YLSB and for which it received, and continues to receive, 5% of YLSB's gross sales;

j. Diluting Plaintiffs' respective membership interests in YLSB LLC without their consent, knowledge or approval; and

k. Utilizing YLSB employees, equipment and assets to promote, facilitate and further his other, unrelated business interests; and commingling YLSB assets and funds with assets of his other business interests and orchestrating intercompany transfers to personally benefit himself and his business interests, to the detriment of YLSB and Plaintiffs, without the approval, authority or consent of any of the Plaintiffs.

39. As a direct and proximate result of Defendants' conduct, Plaintiffs' individual interests in YLSB have been disproportionately damaged in an amount to be proven at trial, which amount is believed to be in excess of $1,000,000, and which amount is above and beyond that harm simply caused to YLSB LLC. As a further direct and proximate result of Defendants' misconduct, Plaintiffs are entitled to and demand equitable relief, including: a verified accounting of the YLSB business and operations; the repatriation of all funds and assets diverted from YLSB; a preliminary and permanent injunction prohibiting Defendants from advancing any assets, property, or funds of the LLC to pay the cost of defending themselves in this action without complying with the LLC's by-laws and operating agreements; and a preliminary and permanent injunction prohibiting Defendants from taking any distributions from the LLC.

40. In doing the things herein alleged, Defendants acted despicably and with malice, oppression, and/or fraud, and with the intent to cause injury to Plaintiffs, thereby warranting an assessment of punitive damages in an amount appropriate to punish them and deter others from engaging in similar misconduct.

## SECOND CAUSE OF ACTION

### Breach of Written Contract

### (By Plaintiffs Derivatively On Behalf of YLSB Against Prime-M Services)

41. Plaintiffs incorporate by reference the allegations of paragraphs 1-34, inclusive, as though set forth in full herein.

42. Plaintiffs bring the following causes of action derivatively on behalf of and for the benefit of YLSB to remedy Prime Participation and Mackay's wrongdoing alleged in this Complaint. The derivative nature of the lawsuit may be presumed when the complaint speaks to actions taken by or against or damages incurred by YLSB.

43. Mackay is a member and owner of YLSB, and he is also a member and officer of Prime Participation.

44. Plaintiffs have not made a demand on YLSB to institute this action because, under the circumstances, such a demand would be a futile and useless act for the following reasons, among others:

　　a. YLSB is in no position to prosecute this action arising from Prime Participation's and Mackay's participation in the wrongs alleged, who therefore is in an irreconcilable conflict of interest regarding the prosecution of this action, and cannot exercise the requisite independence necessary to make good-faith business judgments;

　　b. YLSB is aware of the wrongs forming the basis of the claims alleged, but has chosen not to protect its members and has failed to take action with respect to these claims because any such claims would require Mackay and Prime-M to sue themselves;

　　c. The acts complained of constitute violations of fiduciary duties and gross negligence by Mackay and Prime Participation, which acts are incapable of ratification by YLSB's managers;

　　d. Mackay and Prime Participation are interested parties and cannot in good faith exercise independent business judgment to determine whether to bring this action against themselves; and

    e. In order to bring this suit, YLSB would have to authorize itself to sue its manager, Prime Participation, and, therefore, it would not be able to prosecute any action.

  45. Before Plaintiffs invested in YLSB, Mackay unilaterally negotiated and executed a Management Services Agreement between Prime-M (for whom he is the manager) and YLSB (whose manager is Prime Participation, whose manager is Prime-M, whose manager is Mackay) pursuant to which Prime-M agreed to "manage the day-to-day operations" of the Yogurtland retail stores owned by YLSB. Prime-M assigned its rights and obligations under the Management Services Agreement to Prime-M Services (whose manager is Mackay); this assignment had little to no beneficial impact on the business.

  46. YLSB has performed all obligations it is required to perform under the Management Services Agreement, except for those obligations which it has been excused from performing.

  47. For approximately the last three years, Prime-M Services has breached the Management Services Agreement by failing to provide the services it is contractually obligated to perform. Among other things, in-store management was supposed to be paid for by Prime-M Services from the 5% Gross Sales that Prime-M Services received as compensation. Instead, in-store managers are paid as employees of the individual retail stores, and their compensation is paid for by YLSB and not by Prime-M Services as promised. This significantly and detrimentally has impacted the value of Plaintiffs' membership interests, capital accounts, and investment.

  48. As a direct and proximate consequence of Prime-M Services' breach of the Management Services Agreement, YLSB has been damaged in an amount to be proven at trial but in excess of the jurisdictional minimum.

## THIRD CAUSE OF ACTION

### Accounting

### (By All Plaintiffs Against All Defendants)

49. Plaintiffs incorporate by reference the allegations of paragraphs 1-34, inclusive, as though set forth in full herein.

50. As a result of the wrongful conduct of Defendants alleged herein, Plaintiff, are entitled to an accounting of YLSB's books, records and operations.

51. The exact amount of money due from Defendants to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without an accounting.

52. As a direct and proximate result of Defendants' misconduct, Plaintiffs have been damaged in an amount undetermined at this time, which includes incidental and consequential damages, including lost business opportunities, lost profits, pre-judgment interest, loss of reputation, and attorneys' fees and costs.

53. As a direct and proximate result of Defendants' conduct, Plaintiffs' individual interests in YLSB have been disproportionately damaged in an amount above and beyond that harm simply caused to YLSB LLC. As a further direct and proximate result of Defendants' misconduct, Plaintiffs are entitled to and demand equitable relief, including: a verified accounting of the YLSB business and operations; the repatriation of all funds and assets diverted from YLSB; a preliminary and permanent injunction prohibiting Defendants from advancing any assets, property, or funds of the LLC to pay the cost of defending themselves in this action without complying with the LLC's by-laws and operating agreements; and a preliminary and permanent injunction prohibiting Defendants from taking any distributions from the LLC.

13
**COMPLAINT**

# FOURTH CAUSE OF ACTION

## Involuntary Dissolution Of, and Appointment of Receiver For, YLSB

### (By All Plaintiffs Against All Defendants)

54. Plaintiffs incorporate by reference the allegations of paragraphs 1-34, inclusive, as though set forth in full herein.

55. Defendants, by participating in the acts alleged in this Complaint, have engaged in persistent and pervasive abuse of authority and discretion. Defendants have engaged in the mismanagement of YLSB's assets by and through breaching their duties, owed to Plaintiff, as the President of the managing member of YLSB, and as members of YLSB, Prime Participation, and Prime-M Services, including but not limited to their duties of loyalty to account to YLSB's members and hold as trustee for them any property, profit, or benefit derived by a member in the conduct of YLSB's business or derived from a use by a member of YLSB's property or information, including the appropriation of an LLC opportunity, as well as duties to acknowledging Plaintiffs' right to inspect the company records and be kept timely apprised of YLSB's budgets, business plans, and revised business plans that set forth project revenues, time schedules, and cash flows. Defendants, through the actions and omissions alleged in this Complaint, have seriously offended the statutes regulating limited liability companies and the duties of managing members and members owed to fellow members.

56. Involuntary dissolution of YLSB is necessary and appropriate for all the foregoing reasons, as it is in part necessary for the protection of parties in interest, the LLC and Plaintiffs, under Corporations Code section 17707.03 et seq.

57. Plaintiffs therefore seek an order from this Court requiring the members of YLSB to wind up their affairs, subject to the supervision of the court and in accordance with the provisions of California Corporations Code sections 17707.03 et seq.

58. Plaintiffs further seek any other orders from this Court as may be necessary and proper for the involuntary winding up and dissolution of YLSB including but not limited to the appointment of the managers or members who are to wind up

YLSB's affairs, under Corporations Code section 17707.03(c)(3), that this Court appoint a receiver to take over and manage the affairs of the LLC and to preserve its assets pending the trial of the dissolution action.

## III.
## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and each of them as follows:

1) For compensatory damages against Defendants in the sum of at least $1,000,000.00;

2) For incidental damages in an amount according to proof at the time of trial;

3) For interest at the maximum legal rate;

4) For an accounting of all of YLSB's books, records, and operations;

5) For payment over to Plaintiffs of the amounts due from Defendants as a result of the accounting, and interest on that amount, according to proof;

6) That the court order such further proceedings as may be necessary and proper for the involuntary winding up and dissolution of YLSB, including but not limited to the appointment of the managers or members who are to wind up the LLC's affairs, under Corporations Code section 17707.03(c);

7) For the repatriation of all funds and assets diverted by Defendants from Plaintiffs and YLSB;

8) For an order removing Mackay, as well as any entity controlled by Mackay, as the manager of YLSB and precluding him from ever again acting as such;

9) For attorneys' fees according to proof at the time of trial;

10) For the costs of suit herein incurred; and

11) For such other and further relief as the Court may deem proper.

## IV.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands trial by jury.

Dated: May 13, 2016     BURKHALTER KESSLER
CLEMENT & GEORGE LLP

By: /s/ Michael Oberbeck
Alton G. Burkhalter, Esq.
Michael Oberbeck, Esq.
Attorneys for Plaintiffs Oscar Swanky and Helen Swanky, Craig Emmerson and Cynthia Emmerson, Chase Emmerson, Gary May and Cindy May, Warner Gabel and Kathleen Gabel, and Keith Withycombe and Patricia Withycombe